**Sonja LUJAN, as Personal Representative of the Estate of Kimberly Lujan, Deceased, Plaintiff–Appellant,**

v.

**REGENTS OF the UNIVERSITY OF CALIFORNIA, Defendant–Appellee.**

No. 94–2051.

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1995.

1512

Michael G. Elia, Albuquerque, New Mexico, for Plaintiff-Appellant.

Edward Robert Ricco (Bruce Hall and Jonathan W. Hewes with him on the brief) of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendant-Appellee.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and JENKINS, Senior District Judge.*

JENKINS, Senior District Judge.

The plaintiff brought this action to recover for the death of her daughter, allegedly as a result of exposure to radioactive and other hazardous substances released into the environment from the Los Alamos National Laboratory. The district court held that the plaintiff's state-law claims were subsumed into her so-called public liability claim under the federal Price–Anderson Act and that the plaintiff's public liability claim was untimely. We agree that the plaintiff's public liability claim was untimely. We further conclude that her independent state-law claims are barred by the Eleventh Amendment.

## BACKGROUND

On September 15, 1985, twenty-one-year-old Kimberly Lujan died as the result of recurrent brain cancers, from which she had suffered since she was eighteen months old.

Over six years later, on December 9, 1991, Kimberly's mother, Sonja Lujan, filed this action on behalf of herself and Kimberly's estate alleging injuries and wrongful death from exposure to radioactive and other toxic substances released into the air, soil and water near the Los Alamos National Laboratory in Los Alamos, New Mexico. The laboratory has been researching, developing and testing nuclear weapons since 1943. The defendants, the Regents of the University of California, operate the laboratory under a contract with the United States Department of Energy (DOE). Sonja's complaint alleged various state-law tort claims as well as federal claims under the Price–Anderson Act as amended (Price–Anderson), see 42 U.S.C. §§ 2014 and 2210 (1988 & Supp. V 1993), and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–75 (1988 & Supp. V 1993). The district court dismissed some of the state-law claims and the CERCLA claim for failure to state a claim for relief. The court also held that all Sonja's state-law claims premised on exposure to radioactive substances were preempted by Price–Anderson. Sonja has not appealed those rulings.

The district court then granted the Regents' motion for summary judgment on all of Sonja's remaining claims on behalf of Kimberly's estate on the grounds that those claims were barred by the statute of limitations. The district court first held that Sonja's state-law claims "have meaning only as 'elements' of the federal Price–Anderson Act claim and, even then, only if they are not inconsistent with" the act. Aplt.App. at 93. The district court then held that Sonja's Price–Anderson claim was barred by New

---

* The Honorable Bruce S. Jenkins, Senior District Judge, United States District Court for the District of Utah, sitting by designation.

Mexico's three-year statute of limitations for wrongful death actions. *See* N.M.Stat.Ann. § 41–2–2 (Michie Repl.Pamph.1989). The court reasoned that Price–Anderson incorporates state law to the extent it is not inconsistent with the act and determined that New Mexico's wrongful death statute was not inconsistent with Price–Anderson. The New Mexico statute provides that a cause of action for wrongful death "accrues as of the date of death." *Id.* The district court concluded that New Mexico does not apply a discovery rule to wrongful death actions and that, because Sonja brought her representative claims more than three years after Kimberly's death, those claims were time-barred.

Sonja then dismissed without prejudice her individual claims and appealed the district court's ruling that her representative claims were barred by the statute of limitations.

## DISCUSSION

We review the district court's grant of summary judgment de novo. *E.g., Eaton v. Jarvis Prods. Corp.,* 965 F.2d 922, 925 (10th Cir.1992). In affirming a summary judgment, we are not limited to the district court's reasoning but may affirm on any ground that finds adequate support in the record. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528 (10th Cir.1994).

Sonja's representative claims—the only claims involved in this appeal—fall into two categories: a federal claim under Price–Anderson and various state-law claims. Sonja does not dispute the district court's ruling that all her state-law claims premised on exposure to radioactive substances are preempted by Price–Anderson. Therefore, the only state-law claims at issue here are those based on exposure to substances to which Price–Anderson does not apply. We shall address each category in turn.

### A. *The Plaintiff's Price–Anderson Claim*

The Price–Anderson Act was enacted in 1957 as an amendment to the Atomic Energy Act of 1954. *See* Pub.L. No. 85–256, 71 Stat. 576 (1957).[1] As originally enacted, Price–Anderson had a dual purpose: "to protect the public and to encourage the development of the atomic energy industry." Pub.L. No. 85–256, § 1, 71 Stat. at 576 (codified at 42 U.S.C. § 2012(i)). It protected the public by "assur[ing] adequate public compensation in the case of a nuclear accident," and it encouraged private participation in the development of nuclear energy by limiting the liability of private industry for nuclear accidents. *See* S.Rep. No. 70, *supra* note 1, at 13, *reprinted in* 1988 U.S.C.C.A.N. at 1426.

The original Price–Anderson Act assured adequate compensation for the victims of nuclear accidents by authorizing the federal government to indemnify its licensees and contractors for any liability they might incur as a result of their activities, thus increasing the funds that might otherwise be available for compensating victims. *See* Pub.L. No. 85–256, § 4, 71 Stat. at 576–77. However, absent an independent basis for federal jurisdiction, any action against a licensee or contractor had to be brought in state court and was governed by state substantive and procedural law. *See Silkwood,* 464 U.S. at 251–53, 104 S.Ct. at 623–24; *Brannon,* 940 F.2d at 857, and cases cited therein.

In 1966 Congress amended the Price–Anderson Act to provide extra protection for victims of certain major nuclear accidents, called "extraordinary nuclear occurrences" (ENOs).[2] The 1966 amendments gave feder-

---

1. For a more complete history of the Price–Anderson Act and its amendments, see *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 249–56, 104 S.Ct. 615, 622–26, 78 L.Ed.2d 443 (1984); *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 63–67, 98 S.Ct. 2620, 2625–27, 57 L.Ed.2d 595 (1978); *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1095–97 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994); *Brannon v. Babcock & Wilcox Co. (In re TMI Litigation Cases Consolidated II),* 940 F.2d 832, 836–37, 851–54 (3d Cir.1991), *cert. denied,* 503 U.S. 906, 112 S.Ct. 1262, 117

L.Ed.2d 491 (1992); S.Rep. No. 70, 100th Cong., 1st Sess. 13–15 (1987), *reprinted in* 1988 U.S.C.C.A.N. 1424, 1426–28.

2. The statute defined "extraordinary nuclear occurrence" as

any event causing a discharge or dispersal of source, special nuclear, or by product material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Commission determines to be substantial, and which the Commission deter-

al district courts original jurisdiction over "any public liability action arising out of or resulting from" an ENO, "without regard to the citizenship of any party or the amount in controversy" and provided for the removal of such actions brought in state court or the transfer of such actions brought in a federal district court where venue was improper. *See* Pub.L. No. 89–645, 80 Stat. at 892 (codified as amended at 42 U.S.C. § 2210(n)(2)). The statute did not define "public liability action."

Under the 1966 amendments, the Commission was authorized to require contractors to waive certain defenses as a condition to being indemnified for any liability arising out of certain ENOs. Among the defenses contractors were required to waive was

> any issue or defense based on any statute of limitations if suit is instituted within three years from the date on which the claimant first knew, or reasonably could have known, of his injury or damage and the cause thereof, but in no event more than ten years after the date of the nuclear incident.

*Id.*, 80 Stat. at 892 (codified as amended at 42 U.S.C. § 2210(n)).[3] Although the statutory language appeared to make it discretionary with the Commission whether to require this limited waiver of any statute of limitations defense, Congress and the courts have construed the act and its amendments as establishing a statute of limitations, at least for actions arising out of an ENO. *See* S.Rep. No. 70, *supra* note 1, at 15, *reprinted in* 1988

U.S.C.C.A.N. at 1427 ("The 1966 renewal ... set a minimum statute of limitations ... for the filing of claims after an accident"); *O'Conner,* 13 F.3d at 1096 (the amendments to Price–Anderson dictate "the limitations period for a public liability cause of action"); *Brannon,* 940 F.2d at 854 (the amendments to Price–Anderson created a new federal cause of action and "set a limitations period to govern the newly-created cause of action"); *O'Conner v. Commonwealth Edison Co.,* 770 F.Supp. 448, 455 (C.D.Ill.1991) (Price–Anderson "not only creates a cause of action" but "also provides a period of limitations for that cause of action"), *aff'd,* 13 F.3d 1090 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994). *But see Day v. NLO, Inc.,* 3 F.3d 153, 154 n. 1 (6th Cir.1993) (Price–Anderson "provides no statute of limitations"). The statute did not displace less restrictive state statutes of limitations. *See* S.Rep. No. 70, *supra* note 1, at 15, *reprinted in* 1988 U.S.C.C.A.N. at 1427.

In 1988 Congress amended Price–Anderson again. The 1988 amendments extended the federal district courts' jurisdiction over "public liability" actions to those arising out of any "nuclear incident," not just to those arising out of an ENO, and provided for their removal to federal court. *See* Pub.L. No. 100–408, § 11(a), 102 Stat. at 1076 (codified at 42 U.S.C. § 2210(n)(2)). The amendments also added a definition of "public liability action":

> The term "public liability action" as used in section 170 [42 U.S.C. § 2210] means any suit asserting public liability.[4] A

mines has resulted or will probably result in substantial damages to persons offsite or property offsite.
Pub.L. No. 89–645, 80 Stat. 891, 891 (1966) (codified as amended at 42 U.S.C. § 2014(j)). The terms "source material," "special nuclear material" and "byproduct material" refer to certain specified nuclear or radioactive materials. *See* 42 U.S.C. § 2014(e), (z) & (aa). The term "Commission" referred to the Atomic Energy Commission. *See id.* § 2014(f). The Atomic Energy Commission was abolished and its functions transferred to the Nuclear Regulatory Commission in 1974. *See* Pub.L. No. 93–438, tit. I, § 104(a), & tit. II, § 201(f), 88 Stat. 1233, 1237, 1243 (1974) (codified at 42 U.S.C. §§ 5814(a) & 5841(f)). The 1988 amendments to Price–Anderson substituted "Nuclear Regulatory Commission or the Secretary of Energy, as appropriate," for "Commission" in the statutory defini-

tion of an ENO. *See* Pub.L. No. 100–408, § 16(b)(1), 102 Stat. 1069, 1079 (1988).

3. In 1975 Congress extended the outside time for bringing an action arising out of an ENO from ten years to twenty years. *See* Pub.L. No. 94–197, § 12, 89 Stat. 1111, 1114 (1975). Congress eliminated the twenty-year statute of repose in 1988. *See* Pub.L. No. 100–408, § 10(a), 102 Stat. at 1075 (codified at 42 U.S.C. § 2210(n)(1)).

4. With certain exceptions that do not apply here, the statute defines "public liability" as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation." *See* 42 U.S.C. § 2014(w). The statute defines a "nuclear incident" to include "any occurrence, including an extraordinary nuclear occurrence, ... causing ... bodily injury, sickness, disease, or

public liability action shall be deemed to be an action arising under section 170, and *the substantive rules for decision in such [an] action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.* Pub.L. No. 100–408, § 11(b), 102 Stat. at 1076 (emphasis added) (codified at 42 U.S.C. § 2014(hh)).

■ Whether the statute of limitations for a public liability claim under Price–Anderson is governed by state or federal law therefore depends on whether the statute of limitations is considered a "substantive" rule for decision within the meaning of 42 U.S.C. § 2014(hh). Neither the parties nor the district court analyzed the issue. All assumed the statute of limitations is substantive and therefore governed by state law, as have most courts that have considered the issue. *See Day,* 3 F.3d at 154 n. 1 (noting that, because Price–Anderson "provides no statute of limitations, the district court held, and neither party contests on appeal, that the limitations period and accrual and tolling rules must be borrowed from the State law"); *In re Cincinnati Radiation Litigation,* 874 F.Supp. 796, 832 (S.D.Ohio 1995) (restating plaintiffs' assertion that the federal court must apply the state statute of limitations to their Price–Anderson claim); *Cook v. Rockwell Int'l Corp.,* 755 F.Supp. 1468, 1482 (D.Colo.1991) (holding that Price–Anderson claims are governed by state statutes of limitations because statutes of limitations are substantive). The issue, however, is not so easily resolved.

■ The terms "substantive" and "procedural" do not have a fixed content. "The line between 'substance' and 'procedure' shifts as the legal context changes." *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). *See also, e.g., Sun Oil Co. v. Wortman,* 486 U.S. 717, 726, 108 S.Ct. 2117, 2124, 100 L.Ed.2d 743 (1988);

*Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). Statute of limitations are neither substantive nor procedural per se but have "mixed substantive and procedural aspects." *Sun Oil,* 486 U.S. at 736, 108 S.Ct. at 2129 (Brennan, J., concurring). Depending on the context, courts have reached different conclusions about whether a statute of limitations is substantive or procedural. *Compare, e.g., Sun Oil,* 486 U.S. at 722–29, 108 S.Ct. at 2121–25 (statutes of limitations are procedural for choice-of-law purposes under the Full Faith and Credit Clause); *FDIC v. Petersen,* 770 F.2d 141, 142–43 (10th Cir.1985) (statutes of limitations are procedural for purposes of a contractual choice-of-law provision); *and FDIC v. Belli,* 981 F.2d 838, 842 (5th Cir. 1993) (statutes of limitations are procedural for purposes of determining whether they apply retroactively), *with Guaranty Trust,* 326 U.S. at 110–12, 65 S.Ct. at 1470–71 (statutes of limitations are substantive for purposes of applying the *Erie* doctrine). Traditionally, however, statutes of limitations were generally treated as procedural. *See, e.g., Davis v. Mills,* 194 U.S. 451, 454, 24 S.Ct. 692, 693, 48 L.Ed. 1067 (1904) ("ordinary limitations of actions are treated as laws of procedure"); *FDIC v. Petersen,* 770 F.2d at 142–43 (statutes of limitations "are generally considered to be procedural rather than substantive law") (citations omitted); *Schreiber v. Allis–Chalmers Corp.,* 448 F.Supp. 1079, 1092 (D.Kan.1978) ("the common law recognized statutes of limitations as 'procedural' "), *rev'd on other grounds,* 611 F.2d 790 (10th Cir.1979). *See also Sierra Life Ins. Co. v. First Nat'l Life Ins. Co.,* 85 N.M. 409, 413, 512 P.2d 1245, 1249 (1973) (under New Mexico law statutes of limitations are generally considered procedural and not substantive in nature). Thus, one could argue that federal law—not state law—should provide the statute of limitations for a public liability claim under Price–Anderson.[5]

---

death ... arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of" certain nuclear materials. *Id.* § 2014(q).

**5.** Such a conclusion would not end the inquiry, however, since federal law contains no statute of

limitations for public liability actions generally. Even the limitations provision for ENOs does not provide a limitations period as such but merely applies a discovery rule to public liability actions arising out of an ENO if the action would otherwise be barred by a state statute of limitations. *See* 42 U.S.C. § 2210(n). Where, as here, Con-

Regardless of how statutes of limitations are treated generally, however, where a statute of limitations does not merely bar the remedy for the violation of a right but limits or conditions the right itself, courts have treated the statute as substantive. *See, e.g., Sarfati v. Wood Holly Assocs.,* 874 F.2d 1523, 1525 (11th Cir.1989); *Wayne v. Tennessee Valley Auth.,* 730 F.2d 392, 400–02 (5th Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985); *Myers v. Alvey–Ferguson Co.,* 331 F.2d 223, 224 (6th Cir.1964); *Schreiber,* 448 F.Supp. at 1092; *Chartener v. Kice,* 270 F.Supp. 432, 436 (E.D.N.Y.1967); *Hiskett v. Wells,* 351 P.2d 300, 303–04 (Okla.1959).

■ Limitations provisions contained in wrongful death statutes are generally held to be of the latter variety. *See, e.g., Continental Casualty Co. v. The Benny Skou,* 200 F.2d 246, 248 (4th Cir.1952), *cert. denied,* 345 U.S. 992, 73 S.Ct. 1129, 97 L.Ed. 1400 (1953); *Anastasio v. Holiday Inns, Inc.,* 93 F.R.D. 560, 562 (D.N.J.1982); *Johnson v. Koppers Co.,* 524 F.Supp. 1182, 1188 (N.D.Ohio 1981), *appeal dismissed,* 705 F.2d 451, 454 (6th Cir.1982); *Chartener,* 270 F.Supp. at 436; *Huang v. D'Albora,* 644 A.2d 1, 3–4 (D.C. 1994); *Crenshaw v. Great Central Ins. Co.,* 527 S.W.2d 1, 4–5 (Mo.Ct.App.1975); *Franco v. Allstate Ins. Co.,* 505 S.W.2d 789, 792 (Tex.1974). There was no right to sue for wrongful death at common law. *See, e.g., Western Fuel Co. v. Garcia,* 257 U.S. 233, 240, 42 S.Ct. 89, 90, 66 L.Ed. 210 (1921); *Ickes v. Brimhall,* 42 N.M. 412, 79 P.2d 942, 943 (1938). A wrongful death statute creates and defines the right of action. Where the

statute includes a limitations provision, "[t]he time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all." *The Harrisburg,* 119 U.S. 199, 214, 7 S.Ct. 140, 147, 30 L.Ed. 358 (1886), *overruled on other grounds by Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 409, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339 (1970).

■ New Mexico's statute of limitations for wrongful death actions is no exception. The New Mexico Supreme Court has held that the statute "is not only a limitation on the remedy but also on the right to institute such an action." *Wall v. Gillett,* 61 N.M. 256, 298 P.2d 939, 940 (1956) (citations omitted). *See also Perry v. Staver,* 81 N.M. 766, 769, 473 P.2d 380, 383 (1970) (suggesting that New Mexico follows "the general rule applicable to wrongful death actions," namely, that limitations provisions in wrongful death statutes " 'are not properly statutes of limitations as that term is generally understood, but they are qualifications and conditions restricting the rights granted by the statutes, and must be strictly complied with' ") (quoting Annot., 67 A.L.R. 1070 (1930)). As such, New Mexico's wrongful death statute of limitations is part of the state's substantive law, and the district court correctly concluded that it governed Sonja's public liability claim on behalf of Kimberly's estate.[6] *Cf. Levinson v. Deupree,* 345 U.S. 648, 651, 73 S.Ct. 914, 916, 97 L.Ed.2d 1319 (1953) ("a time limitation deemed attached to the right of

gress has not provided an express limitations period for actions involving federal rights, courts generally borrow state law limitations periods. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 355, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991); *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 158–61 & n. 13, 103 S.Ct. 2281, 2287–89 & n. 13, 76 L.Ed.2d 476 (1983); *Bowdry v. United Air Lines, Inc.,* 956 F.2d 999, 1004–05 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992). Ordinarily, when federal law borrows a state statute of limitations, it also borrows state law governing when the statute begins to run and when it is tolled. *See, e.g., Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95

S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975). However, state law is not controlling in such a case; "considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration." *Id.* at 465, 95 S.Ct. at 1722. Thus, if the statute of limitations were considered procedural, federal law would determine when the cause of action accrued, even if federal law would look to state law to provide the limitations period.

6. Our holding is limited to claims based on New Mexico's wrongful death statute and does not necessarily mean that other state-law claims would be governed by state statutes of limitations. *See supra* note 5 and accompanying text.

action created by the State is binding in the federal forum") (citing *Western Fuel Co. v. Garcia*, 257 U.S. at 242, 42 S.Ct. at 90, and *The Harrisburg*, 119 U.S. at 214, 7 S.Ct. at 147) (all admiralty cases).

■ Sonja argues that Price–Anderson only adopts state substantive law to the extent it is not inconsistent with 42 U.S.C. § 2210 and that it is inconsistent with section 2210 not to apply a discovery rule to her public liability claim.

As we have seen, section 2210 provides for a discovery rule in public liability actions but only if the action arises out of an ENO (and then only indirectly, by authorizing the DOE to require its contractors to waive any limitations defense if suit is brought within three years of discovery). *See* 42 U.S.C. § 2210(n)(1). It is undisputed that Sonja's claim does not arise out of an ENO. Therefore, the statute does not require application of a discovery rule, and the district court's refusal to apply such a rule was not inconsistent with the terms of the statute.

■ Sonja suggests that the 1988 amendments to Price–Anderson show Congress's intent to expand coverage under the act and that the failure to apply a discovery rule to her claim would be inconsistent with this federal policy embodied in the act. Our task, however, is to effectuate the terms of the statute as written, not to give effect to some broad, amorphous federal policy. *See, e.g., National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707 (7th Cir.1994) (courts do not enforce legislative purposes in the abstract but enforce rules embedded in statutory language, which may track those purposes only imperfectly). Statutes may have multiple purposes, *id.,* and may represent a compromise between competing considerations. The difficult policy choices reflected in a statute are for the legislature to make, "and it frustrates rather than effectuates legislative intent simplistically to assume

that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 526, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987). Policy arguments are simply irrelevant where the statutory language is unambiguous. *Id.; Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir.1988). Here, the statutory language is clear. Congress specified that state law should provide the substantive rules for decision in public liability actions unless it is "inconsistent with the *provisions* of" section 2210. 42 U.S.C. § 2014(hh) (emphasis added). There is nothing inconsistent with the provisions of section 2210 to apply a discovery rule to public liability actions arising out of an ENO and not to those arising out of less serious nuclear incidents. As the district court noted, Congress may have concluded that the problems of proof associated with lesser nuclear accidents, which are not always easily identified, outweigh a plaintiff's right to full compensation. *See* Aplt.App. at 97.

We recognize, as did the district court, that exposure to radiation "can occur without the slightest indication of its presence and the effects of such exposure may lie dormant for years." *Id.* at 96–97. Congress was not unaware of the potential for injustice in cases such as this. *See* H.R.Rep. No. 104, 100th Cong., 1st Sess., pt. 1, at 17 (1987). Yet it chose not to extend the three-years-from-discovery rule to all public liability actions when it extended federal jurisdiction to cover all such actions. It is not for us to correct Congress's alleged oversight. Congress is always free to enact a federal statute of limitations to cover a federal claim or to engraft a federal discovery rule onto borrowed state statutes of limitations, as it has done with claims arising out of ENOs and with state-law claims arising out of exposure to hazardous substances under CERCLA. *See* 42 U.S.C. §§ 2210(n)(1) & 9658.[7] How-

---

7. CERCLA provides that, in any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, ... if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than

the federal required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
42 U.S.C. § 9658(a)(1). The statute defines "federally required commencement date" as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property

ever, until Congress sees fit to do so, we must apply the statute as written, and the statute as written does not mandate application of a discovery rule in a case such as this but requires us to look to state law.

■ Sonja next argues that New Mexico law requires application of a discovery rule. She concedes that the New Mexico Supreme Court has never applied a discovery rule to the wrongful death statute of limitations but claims that, if faced with the issue, it would apply a discovery rule to wrongful death claims such as hers, involving latent injuries.[8]

Although there are no New Mexico decisions directly on point, we can anticipate how the New Mexico Supreme Court would resolve the issue by examining decisions from New Mexico and other jurisdictions that have considered similar issues. *See Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 250 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 295, 130 L.Ed.2d 209 (1994). Our task is to determine what New Mexico law is, "not what it ought to be." *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941).

Historically, the New Mexico Supreme Court has construed the wrongful death act restrictively. *See, e.g., Romero v. Atchison, T. & S.F. Ry. Co.*, 11 N.M. 679, 72 P. 37, 38 (1903) (the wrongful death statute, being in derogation of the common law, must be strictly construed). The statute originally provided that a wrongful death action had to

be brought within one year "after the cause of action shall have accrued."[9] *See* 1882 N.M. Laws ch. 61, § 9. The New Mexico Supreme Court held that the statute was a survival statute and did not create a new cause of action in favor of the beneficiaries of the decedent. Therefore, a cause of action under the statute accrued when the decedent was injured, not when he or she died. An action for wrongful death could thus be barred if brought within one year of the date of death but more than one year after the fatal injury was inflicted. *See Natseway,* 251 P.2d 274 at 276–78; *State ex rel. De Moss v. District Court,* 55 N.M. 135, 227 P.2d 937, 938 (1951). Under the court's construction of the statute, a wrongful death action could be barred before the wrongful death even occurred, as was the case in *Natseway.*[10]

In the wake of *Natseway,* the New Mexico legislature amended the statute in 1953 to extend the limitations period from one year to three years.[11] However, the amended statute still ran from the date of injury, so where death did not result until almost three years after the injury, a wrongful death claim could still be barred unless brought immediately. The court so held in *Kilkenny v. Kenney,* 68 N.M. 266, 361 P.2d 149, 151 (1961). Shortly thereafter, the legislature again amended the statute to specify that a cause of action for wrongful death "accrues as of the date of death," *see* 1961 N.M. Laws

---

damages ... were caused or contributed to by the hazardous substance ... concerned." *Id.* § 9658(b)(4)(A). Sonja has not argued and we do not reach the question of CERCLA's effect, if any, on a public liability claim under Price–Anderson.

8. As a back-up position, Sonja has asked that we certify the issue to the New Mexico Supreme Court under N.M.Stat.Ann. § 34–2–8 and N.M.R.App.P. 12–607. Because we conclude that the issue can be decided based on existing New Mexico precedent, we deny the motion to certify.

9. New Mexico adopted its wrongful death statute from Missouri. The Missouri and New Mexico statutes were based on the English Fatal Accidents Act of 1846, known as Lord Campbell's Act. Lord Campbell's Act, however, allowed an action to be brought within one year after death. Missouri and New Mexico changed the limitation period to a year "after the cause of action shall

have accrued." The New Mexico Supreme Court found this change purposeful and refused to read a limitations period to a year from death where death did not immediately follow the fatal injury. *See Natseway v. Jojola,* 56 N.M. 793, 251 P.2d 274, 278 (N.M.1952).

10. The Natseways' son was shot by a neighbor boy on December 28, 1949, but did not die until March 28, 1951. The court held that the Natseways' wrongful death action, which was filed seven months after the death but nearly two years after the shooting, was barred by the one-year statute of limitations.

11. Because the statute affected substantive rights and not just remedies, the New Mexico Supreme Court refused to give the amendment retroactive effect. *See Wall v. Gillett,* 61 N.M. 256, 298 P.2d 939, 940 (1956).

ch. 202, § 1, thus giving plaintiffs three years from the date of death to bring a wrongful death action.

Sonja argues that the 1961 amendment was only meant to do away with earlier accrual dates, thus preventing a wrongful death claim from being barred before the decedent even died, and was not meant to preclude a later accrual date. The only evidence she cites to support her argument is the timing of the amendment, which appears to have been passed in response to *Kilkenny.* She cites no legislative history to support her interpretation of the statute, and the court has found none.[12] If the legislature had intended only to foreclose an earlier accrual date—not a later date—it could have said so, but it did not. It did not say that a cause of action for wrongful death accrues "no earlier than" the date of death or when the plaintiff discovers or should have discovered her cause of action. It said that a cause of action accrues "*as of* the date of death"—that is, "at" or "on" the date of death, neither earlier nor later than. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 129 (1971); *PQ Corp. v. United States,* 11 CIT 53, 652 F.Supp. 724, 738 & n. 18 (1987). "As of" denotes a date certain. *See PQ Corp.,* 652 F.Supp. at 738 & n. 18; *City of Twin Falls ex rel. Cannon v. Koehler,* 63 Idaho 562, 123 P.2d 715, 717 (1942). Courts have found similar language unambiguous. *See, e.g., Stiles v. Union Carbide Corp.,* 520 F.Supp. 865, 868 (S.D.Tex.1981); *Morano v. St. Francis Hosp.,* 100 Misc.2d 621, 420 N.Y.S.2d 92, 95 (Sup.Ct.1979); *Shover v. Cordis Corp.,* 61 Ohio St.3d 213, 574 N.E.2d 457, 461 (1991); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 350–52 (Tex.1990).

As the Regents point out, the legislature may have had good reason not to provide for a later, more flexible accrual date. A definite accrual date promotes "basic fairness" by "encouraging promptness in instituting a

claim, suppressing stale or fraudulent claims, . . . avoiding inconvenience" and encouraging plaintiffs "to bring their actions while the evidence is still available and fresh." *See Roberts v. Southwest Community Health Servs.,* 114 N.M. 248, 256, 837 P.2d 442, 450 (1992). *Cf. Moncor Trust Co. v. Feil,* 105 N.M. 444, 446, 733 P.2d 1327, 1329 (in providing that a medical malpractice claim runs from the date of the act of malpractice, the New Mexico legislature "sought to require" such claims "to be brought within such time as to enable the parties to prove the material facts while they were reasonably fresh and before such proof has become stale, memories have dimmed, or material evidence has been entirely lost"), *cert. denied,* 105 N.M. 421, 733 P.2d 869 (1987). The legislature may also have rejected a later accrual date for wrongful death actions to provide for "the prompt settlement of the economic and legal affairs of the deceased." *See Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 556 (3d Cir.1985). Or the legislature may have concluded that death is such a significant injury (the "ultimate" harm, as the plaintiff says) that a reasonable person would be led to investigate the cause of death and generally could, with reasonable diligence, discover the cause within three years. *See Shover,* 574 N.E.2d at 461; *Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 526 A.2d 323, 326 (1987); *Moreno,* 787 S.W.2d at 354 n. 6. *See generally Moreno,* 787 S.W.2d at 353 (listing rationales for not applying a discovery rule to wrongful death actions).

We can only speculate about the legislature's motives in amending the statute. The statutory language, however, is clear. A cause of action for wrongful death accrues "as of the date of death." New Mexico courts have consistently "refused to extend the period of limitations" under the wrongful death statute, *see Molinar v. City of Carls-*

---

**12.** The New Mexico Supreme Court has opined that the 1961 amendment was meant to remedy a logical inconsistency in the court's prior interpretations of the statute. *See Stang v. Hertz Corp.,* 81 N.M. 348, 352, 467 P.2d 14, 18 (1970). The court had held that a cause of action under the statute is in the personal representative. *See Kilkenny,* 361 P.2d at 150–51. However, the court had also held that the limitation period

began to run as of the date of injury, which could be before the injured person died. Since a "personal representative" could not bring an action until the death of the injured person, the statute could run before an action could even be filed. The 1961 amendment merely set "a more logical time" for the commencement of the limitations period. *Stang,* 81 N.M. at 352, 467 P.2d at 18.

*bad,* 105 N.M. 628, 631, 735 P.2d 1134, 1137 (1987), or to "provide a saving clause or create an exception where the statute contains none," *Natseway,* 251 P.2d at 277.

█ We recognize that the New Mexico Supreme Court has recently applied a discovery rule in some cases, even where it had previously been reluctant to do so. *See Sharts v. Natelson,* 118 N.M. 721, 724, 885 P.2d 642, 645 (1994) (adopting a discovery rule in legal malpractice actions); *Roberts,* 114 N.M. at 257, 837 P.2d at 451 (adopting a discovery rule for medical malpractice actions against nonqualified health care providers, overruling *Roybal v. White,* 72 N.M. 285, 383 P.2d 250 (1963)). In each of those cases, however, the court was required to decide when the cause of action accrued. The court was quick to point out that determining when a cause of action accrues is a judicial function only "[i]n the absence of explicit instructions from the legislature." *Roberts,* 114 N.M. at 252, 837 P.2d at 446. Where, as here, the legislature has specified when a cause of action accrues, the court is not free to extend the period by application of a discovery rule. *See id.* at 252–53, 837 P.2d at 446–47.[13] *See also Kern ex rel. Kern v. St. Joseph Hosp., Inc.,* 102 N.M. 452, 455, 697 P.2d 135, 138 (1985) (where a statute provides that the time for bringing a claim runs from the date of the act giving rise to the claim, the court could not construe it to run from discovery of the injury); *Irvine v. St. Joseph Hosp., Inc.,* 102 N.M. 572, 574–75, 698 P.2d 442, 444–45 (1984) (accord), *cert. quashed,* 102 N.M. 564, 698 P.2d 434 (1985).[14]

Our conclusion that New Mexico would not apply a discovery rule in wrongful death actions is consistent with the majority of decisions from other jurisdictions construing similar statutes, *see, e.g., Pobieglo v. Mon-*

*santo Co.,* 402 Mass. 112, 521 N.E.2d 728, 731–32 (1988); *Shover,* 574 N.E.2d at 461–62; *Pastierik,* 526 A.2d at 325; *Moreno,* 787 S.W.2d at 353–55, although there is also contrary authority. *See generally Moreno,* 787 S.W.2d at 353 n. 4; Judy E. Zelin, Annotation, *Time of Discovery as Affecting Running of Statute of Limitations in Wrongful Death Action,* 49 A.L.R.4th 972, § 8 (1986), and cases cited therein.

█ We acknowledge that our conclusion that New Mexico would not apply a discovery rule to wrongful death claims may lead to harsh or unjust results in cases such as this involving latent injuries. "But the fact that hardship may result can furnish no warrant for the courts to supply what the Legislature has omitted or to omit what it has inserted." *Natseway,* 251 P.2d at 277 (quoting *Vukovich v. St. Louis, Rocky Mountain & Pac. Co.,* 40 N.M. 374, 60 P.2d 356, 359 (1936)). Statutes of limitations do "not discriminate between the just and the unjust claim." *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). They are always arbitrary to some extent, *see id.,* and to that extent unjust. "Statutes of limitations are not directed to the merits of any individual case, they are a result of the legislative assessment of the merits of cases in general. The fact that a meritorious claim might thereby be rendered nonassertible is an unfortunate, occasional by-product of the operation of limitations." *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex.1977). Statutes of limitations represent a policy judgment about the proper balance to be struck between competing considerations—the plaintiff's interest in vindicating her rights and the defendant's interest in repose and in not having to defend stale

---

**13.** *Roberts* involved New Mexico's Medical Malpractice Act, which provides that a claim against a qualified health care provider must be brought "within three years after the date that the act of malpractice occurred." *See* N.M.Stat.Ann. § 41–5–13. The court noted that, if the act's statute of limitations applied to Roberts's claim against a nonqualified health care provider, her claim would be barred "because it was filed more than three years after the negligent act *even though* [Roberts] may not have discovered her injury"

until later. 114 N.M. at 252–53, 837 P.2d at 446–47 (emphasis added).

**14.** New Mexico law recognizes that a defendant who prevents a plaintiff from learning of her cause of action may be barred from relying on the statute of limitations under the doctrine of fraudulent concealment or the principle of equitable estoppel. *See Kern,* 102 N.M. at 455–56, 697 P.2d at 138–39. Sonja does not argue her and offered no evidence below that the Regents somehow prevented her from discovering her

claims. That judgment is peculiarly within the competence of the legislature, and any arguments about the harshness or unjustness of the legislative judgment are best addressed to that body. *See Natseway,* 251 P.2d at 277; *Kern,* 102 N.M. at 455, 697 P.2d at 138; *Irvine,* 102 N.M. at 576, 698 P.2d at 446. The district court did not err in holding that Sonja's public liability claim was barred by New Mexico's three-year statute of limitations on wrongful death actions, as incorporated by Price–Anderson, 42 U.S.C. § 2014(hh).

## B. *The Plaintiff's State–Law Claims*

■ The district court granted the Regents summary judgment on all of Sonja's remaining representative claims, including her state-law claims. Sonja argues that, to the extent Price–Anderson does not apply to substances to which Kimberly was exposed, CERCLA applies a discovery rule to her state-law claims, making them timely. We do not reach that issue, however, because we agree with the Regents that, to the extent Price–Anderson does not control Sonja's state-law claims, those claims are barred by the Eleventh Amendment.[15]

■ The Eleventh Amendment prevents a federal court from taking jurisdiction over an action against one state by citizens of another state. U.S. Const. amend. XI. A state's immunity from suit in federal court under the Eleventh Amendment extends to instrumentalities of the state as well. *Meade v. Grubbs,* 841 F.2d 1512, 1525 (10th Cir. 1988). We recently held that the Regents were an arm of the State of California and that the Eleventh Amendment therefore barred state-law claims against the Regents arising out of their dismissal of an employee at the Los Alamos National Laboratory. *See Mascheroni v. Board of Regents,* 28 F.3d 1554, 1557–60 (10th Cir.1994). Sonja argues that *Mascheroni* is not controlling for two reasons.

First, Sonja suggests that Eleventh Amendment immunity depends on sovereign immunity and that sovereign immunity does not apply here because the Regents acted

tortiously and in a proprietary capacity in a commercial endeavor outside the sovereign territory of California. Sonja further suggests that this court must treat the Regents as a New Mexico court would with respect to state-law issues and that New Mexico would not recognize the Regents' sovereign immunity but would exercise jurisdiction over her state-law claims against the Regents.

■ Eleventh Amendment immunity is based on principles of federalism as well as principles of sovereign immunity. It is separate from sovereign immunity and can exist even where sovereign immunity does not. *Griess v. Colorado,* 841 F.2d 1042, 1044 (10th Cir.1988); *American Tel. & Tel. Co. v. Madison Parish Police Jury,* 465 F.Supp. 168, 170 (W.D.La.1977); *Aquilar v. Kleppe,* 424 F.Supp. 433, 436 (D.Alaska 1976). If the Eleventh Amendment only applied where the state was immune from suit, it would be superfluous. The fact that the Regents may not be immune from suit in state court under principles of sovereign immunity does not mean that federal courts can exercise jurisdiction over Sonja's state-law claims consistent with the Eleventh Amendment.

Second, Sonja argues that the Eleventh Amendment does not apply because the United States, not the Regents or the State of California, is the real party in interest since, under Price–Anderson, the federal government must indemnify the Regents for any liability they incur. *See* 42 U.S.C. § 2210(d).

Some courts have suggested that, where any recovery would come from the federal government and not the state, the Eleventh Amendment does not bar the claim. *Municipal Auth. v. Pennsylvania,* 496 F.Supp. 686, 692 (M.D.Pa.1980) (where the plaintiffs could show that they were seeking money that the federal government had paid the state to be passed on to the plaintiffs and that the money had been maintained in a segregated account and had not been used for other purposes, an order directing payment of the money would have no true effect on the state

claim and bringing suit within the statutory period.

**15.** The Regents concede that Congress has abrogated their Eleventh Amendment immunity with

respect to public liability claims under Price–Anderson and therefore do not challenge the courts' jurisdiction over such claims.

treasury, and therefore a claim for the money would not be barred by the Eleventh Amendment); *Harrington v. Blum,* 483 F.Supp. 1015, 1021–22 (S.D.N.Y.1979) (where the state could seek reimbursement from the Department of Agriculture for retroactive benefits paid to food stamp recipients, a claim for such benefits was not barred by the Eleventh Amendment), *aff'd without opinion,* 639 F.2d 768 (2d Cir.1980). Other courts, however, have suggested that the fact that the state or its agency may be covered for any loss it may sustain does not abrogate its Eleventh Amendment immunity. *See Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982) (Eleventh Amendment can apply to cases that do not seek a money judgment payable from the state treasury); *Kroll v. Board of Trustees,* 934 F.2d 904, 908 (7th Cir.) (that a money judgment will not be payable from the state treasury is irrelevant to a state agency's Eleventh Amendment immunity), *cert. denied,* 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991); *Cannon v. University of Health Sciences/Chicago Medical Sch.,* 710 F.2d 351, 357 (7th Cir.1983) (an action against state universities was barred by the Eleventh Amendment regardless of "the possibility that a damage award would be met ... from federal funds"); *Dunlop v. Minnesota,* 626 F.Supp. 1127, 1130 (D.Minn.1986) (the fact that the state might properly seek reimbursement from the United States does not deprive it of its Eleventh Amendment immunity).

We need not reach the question of whether the Eleventh Amendment applies to a claim that would ultimately be paid from federal—not state—funds. The United States' obligation to indemnify the Regents under Price–Anderson is limited to claims governed by Price–Anderson. *See* 42 U.S.C. §§ 2210(d) & 2014; 10 C.F.R. § 8.2(a); 48 C.F.R. §§ 950.7006 & 952.250–70(d). Sonja has not shown that the United States has any obligation to indemnify the Regents for her independent state-law claims that fall outside the scope of Price–Anderson—the only claims at issue here. As to those claims, any recovery would have to come from "public funds in the state treasury," making the claims claims against the state and thus barred by the Eleventh Amendment. *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974).

Because Sonja's attempts to distinguish *Mascheroni* are unavailing, *Mascheroni* is dispositive of Sonja's remaining state-law claims. Neither the district court nor this court has jurisdiction to consider those claims.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment on Sonja's Price–Anderson claim on behalf of Kimberly's estate. We DISMISS Sonja's state-law claims and REMAND them to the district court with instructions to VACATE its judgment on those claims and DISMISS them for lack of jurisdiction.