Carrie CORCORAN, as Executrix of the Estate of Eugene Corcoran, deceased, and Carrie Corcoran, individually, Plaintiffs–Appellants,

v.

NEW YORK POWER AUTHORITY, Wedco Corp., and Westinghouse Electric Corporation, Defendants–Appellees.

Docket No. 98–7945

United States Court of Appeals, Second Circuit.

Argued April 21, 1999.

Decided Sept. 29, 1999.

Carrie Corcoran, pro se, Macungie, Pa., for Plaintiffs–Appellants.

Donald E. Jose, Jose & Wiedis, West Chester, Pa. (Sheila L. Birnbaum, Peter J. McKenna, Wendy Fleishman, Skadden, Arps, Slate, Meagher & Flom LLP, New York, N.Y., of counsel), for Defendants–Appellees.

Before: KEARSE, McLAUGHLIN, AND CALABRESI, Circuit Judges.

## BACKGROUND

McLAUGHLIN, Circuit Judge:

Because this case arises on appeal from a grant of summary judgment for defendants, we must view the evidence in the light most favorable to the plaintiffs, the nonmoving parties. With that in mind, we set forth the facts as follows.

Eugene Corcoran repaired machinery as a millwright for Westinghouse Electric Corporation ("Westinghouse"). Between June and August 1985, Mr. Corcoran was assigned to work temporarily at the Indian Point 3 Nuclear Power Plant ("IP3"). IP3 is a federally-licensed plant with an operating license held by the New York Power Authority ("NYPA"), a state agency. Mr. Corcoran performed maintenance work on the steam turbine, including the "stop valve." In 1985, the steam generator tubes that carried radioactive water leaked radioactive particles and substances into the stop valve. Westinghouse and NYPA neither alerted Mr. Corcoran to the presence of radiation nor provided him with protective clothing or radiation monitoring equipment.

Mr. Corcoran was exposed to radiation in excess of the permissible occupational dose limits for workers in restricted areas of nuclear power plants. Westinghouse and NYPA failed to notify Mr. Corcoran that he had been exposed to radiation or administer medical tests to assess the level of radiation exposure.

Sometime in June 1985—the very first month of his assignment to IP3—Mr. Corcoran experienced radiation sickness. At the time, however, his symptoms were not diagnosed as resulting from radiation exposure; neither did Mr. Corcoran associate the illness with radiation. For several years following this episode, Mr. Corcoran continued to suffer from an illness of unexplained etiology.

About seven years later, on March 16, 1992, Mr. Corcoran was told by his oncologist, Dr. Romeo Balagot, that he had chronic myeloid leukemia ("CML"), a fatal disease of the blood and immune systems. While exploring Mr. Corcoran's occupational history, Dr. Balagot informed Mr.

Corcoran that exposure to radiation was a possible cause of leukemia. Four days later, Mr. Corcoran went to a second oncologist, Dr. Nirmala Shevde, who confirmed the fatal diagnosis.

In the following two or three months, Mr. Corcoran and his ex-wife, Carol Ellis, discussed filing a radiation claim. Ellis believed that Mr. Corcoran's leukemia may have been caused by radiation exposure. On two or three occasions she urged him to consult a lawyer.

Sometime in the summer of 1992, Mr. Corcoran called Stephen Coli, a co-worker at IP3, asking Coli to investigate whether Corcoran had been exposed to radiation at IP3. Hugh Gilmartin, a NYPA employee, told Coli not to "drag things up." Coli reported to Mr. Corcoran that his investigation had led to a "dead end" and discouraged Mr. Corcoran from pursuing a claim.

In an effort to cure the disease, Mr. Corcoran had a bone marrow transplant in March 1993. The transplant failed to arrest the spread of leukemia. Mr. Corcoran died on September 25, 1993.

In January 1994, Mr. Corcoran's daughter, Carrie Corcoran ("Ms.Corcoran") and Ellis consulted several lawyers about bringing a lawsuit. Lawyers from Kreindler & Kreindler posted a notice in the millwright's union hall, seeking information from anyone who knew about radiation leaks at IP3 in 1985. On April 5, 1994, Ms. Corcoran filed a notice of claim with NYPA, claiming damages for Mr. Corcoran's injuries and wrongful death.

Nine months later, Coli called the lawyers in response to the union hall notice. On March 15, 1995, based on what Coli told them, Kreindler & Kreindler sued on behalf of Ms. Corcoran, individually and as executrix of Mr. Corcoran's estate. The defendants were NYPA and WEDCO Corporation (a Westinghouse subsidiary). The suit was in a New York state court (the "NYPA action"). Kreindler & Krein-

dler later withdrew and Ms. Corcoran proceeded *pro se.*

NYPA and WEDCO removed the action to the United States District Court for the Southern District of New York (Cote, *J.*), in July 1995. One month later, NYPA and WEDCO moved to dismiss the action pursuant to Fed.R.Civ.P. 12. In response, Ms. Corcoran filed a motion "to estop defendant, New York Power Authority, from asserting an affirmative defense regarding the statute of limitations on the plaintiffs' notice of claim or plaintiffs' action" (the "Estoppel motion"). Ms. Corcoran filed an Amended Complaint in the NYPA action and commenced a separate, new action against Westinghouse (the "Westinghouse action").

In response to the Estoppel motion, NYPA cross-moved for summary judgment, arguing that plaintiffs' claims against NYPA were barred by Mr. Corcoran's failure to file a timely notice of claim. Ms. Corcoran responded to the Rule 12 motions and also sought leave of Court to substitute Westinghouse for WEDCO or, in the alternative, an order consolidating the NYPA and Westinghouse actions.

The two actions were consolidated as *Corcoran v. New York Power Auth.,* Nos. 95 Civ. 5357, 95 Civ. 8102(DLC). One month later, NYPA, WEDCO, and Westinghouse moved to dismiss the Amended Complaint against NYPA and the Complaint against Westinghouse pursuant to Fed.R.Civ.P. 12. In December 1995, Ms. Corcoran filed an Amended Complaint against Westinghouse. She filed a Second Amended Complaint against NYPA three weeks later.

The amended complaints against NYPA and Westinghouse contained five groups of allegations:

- *First,* Ms. Corcoran alleged that NYPA wrongfully caused Mr. Corcoran's death by negligently "owning, operating, controlling, supervising, surveying, monitoring, maintaining and managing the possession and use of nu-

clear material" at IP3, and by negligently misrepresenting and failing to warn Mr. Corcoran about the safety of IP3.

- *Second,* NYPA and Westinghouse engaged in a barrage of intentional tortious conduct when they failed to monitor Mr. Corcoran's exposure to radiation, knowingly failed to correct industrial practices which led to Mr. Corcoran's exposure, failed to conduct radiation surveys in Mr. Corcoran's work area, "intentionally assigned [Mr. Corcoran] to work in and around the dangerously radioactive area without the benefit of equipment that would warn and/or protect him from the dangers present," and failed to notify Mr. Corcoran that he had been exposed to excessive levels of radiation.

- *Third,* NYPA and Westinghouse violated federal regulations and statutes governing the handling of radioactive materials and the protection of employees working with these materials.

- *Fourth,* NYPA and Westinghouse conspired to defraud Mr. Corcoran by concealing that he had been exposed to excessive radiation.

- *Fifth,* Ms. Corcoran asserted a survival action on behalf of her father, seeking to recover damages for the injuries he suffered prior to his death.

Defendants moved to dismiss both the Second Amended Complaint and the Amended Westinghouse Complaint under Rule 12(b). Judge Cote converted the motion to one for summary judgment and granted the motion in part, and denied it in part. *See Corcoran v. New York Power Auth.,* 935 F.Supp. 376 (S.D.N,Y.1996) ("*Corcoran I*"). She held that because Mr. Corcoran's claims arose out of a nuclear incident, plaintiffs' exclusive right to recover was in a "public liability action" under 42 U.S.C. § 2210(n)(2) of the Price–Anderson Amendments Act of 1988 ("Price–Anderson"). *See Corcoran I,* 935 F.Supp. at 383–85.

Price–Anderson expressly mandates that state law provide the substantive law to govern a public liability action. *See* 42 U.S.C. § 2014(hh). Accordingly, Judge Cote focused on Ms. Corcoran's allegations to determine whether any of them had a state law counterpart and thus stated a claim upon which relief could be granted under Price–Anderson. (Judge Cote dismissed Ms. Corcoran's claims asserting violations of various federal regulations and statutes, ruling that these claims did not state a cause of action under Price–Anderson). *See Corcoran I,* 935 F.Supp. at 388–89. Continuing her analysis of New York law, Judge Cote held that: (1) the negligence allegations were cognizable under New York's law of negligence; (2) the claims alleging intentional exposure to radiation were analogous to New York state law governing claims for battery (the "battery claim"); (3) the conspiracy to defraud allegation sufficed to state a cause of action for fraud under New York law (the "fraud claim"); and (4) the survival action was cognizable under New York law. *See id.* at 387–90. Judge Cote then allowed the parties limited discovery to determine whether the claims based on state tort law were barred by the applicable statutes of limitations.

Following completion of this limited discovery, Judge Cote granted defendants' motion for summary judgment. *See Corcoran v. New York Power Auth.,* Nos. 95 Civ. 5357, 95 Civ. 8102, 1997 WL 603739, at *9 (S.D.N.Y. Sept. 29, 1997) ("*Corcoran II*"). Judge Cote found that plaintiffs had failed to file a timely notice of claim against NYPA, as required by N.Y. Gen. Mun. Law § 50–e (McKinney 1999) and N.Y. Pub. Auth. Law §§ 1017(2), 2980 (McKinney 1994) (requiring a notice of claim as a condition precedent for actions against NYPA). Therefore, all claims against NYPA were barred. Judge Cote rejected Ms. Corcoran's arguments for equitable estoppel and permission to treat the April 4, 1994 notice of claim as a late-filed notice of claim under N.Y. Gen. Mun.

Law § 50–e(5). *See Corcoran II*, 1997 WL 603739, at *6–8.

The claims against Westinghouse were dismissed on the ground that New York Workers' Compensation Law provided the exclusive remedy for unintentional torts and Ms. Corcoran failed to produce evidence of intentional tortious acts by Westinghouse. *See id.* at *8. Judge Cote further ruled that even if Ms. Corcoran could have adduced evidence supporting a fraud or battery claim against Westinghouse, such claims would have been barred in New York by the one-year statute of limitations governing battery actions, N.Y. C.P.L.R. § 215(3) (McKinney 1993).

Ms. Corcoran moved for reconsideration, arguing that Judge Cote erred when she: (1) applied New York's notice of claim requirement to bar the claims against NYPA; and (2) overlooked evidence and arguments showing that Westinghouse was liable for the intentional torts of battery and fraud. *See Corcoran v. New York Power Auth.*, No. 95 Civ. 5357, 1998 WL 274290, at *2 (S.D.N.Y. May 27, 1998) ("*Corcoran III*"). Ms. Corcoran also moved to amend her complaint to add new causes of action for violations of 42 U.S.C. §§ 1983, 1985, and 1986. While these motions were pending, Ms. Corcoran commenced a new action in the Southern District against NYPA, Westinghouse, and several individual defendants, alleging violations of §§ 1983, 1985, and 1986. *See Corcoran v. Sinclair*, No. 97 Civ. 9286(DLC), 1999 WL 177444 (S.D.N.Y. March 30, 1999) ("*Corcoran IV*").

Judge Cote denied both the motion for reconsideration and the motion to amend. *See Corcoran III*, 1998 WL 274290, at *4–5. Judge Cote reaffirmed her previous holdings that: (1) New York's notice of claim requirement barred the claims against NYPA; (2) NYPA was not equitably estopped from asserting the notice of claim requirement; and (3) Ms. Corcoran's intentional tort claims against Westinghouse were time-barred. *See id.* at *2–4. Judge Cote denied Ms. Corcoran's request to amend the complaint, reasoning that the request was untimely and, in any event, Ms. Corcoran had commenced a new action raising these claims. *See id.* at *4.

Ms. Corcoran now appeals, arguing that Judge Cote erred when she: (1) granted summary judgment in favor of NYPA and Westinghouse; and (2) denied the request to amend the complaint.

## DISCUSSION

We review Judge Cote's decision to grant summary judgment *de novo*. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir.1996).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[W]e read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### I. The Price–Anderson Act

Congress took the first step toward establishing a comprehensive federal framework governing the nuclear power industry in 1946 when it passed the Atomic Energy Act of 1946. *See* Act of Aug. 1 1946, ch. 724, 60 Stat. 755 (1946). The Act "contemplated that the development of nuclear power would be a Government monopoly." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 63, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

Eight years later, Congress determined that it was in the public interest to encourage private sector participation in the nuclear power industry. Congress thus enacted the Atomic Energy Act of 1954 ("AEA"), Act of Aug. 30 1954, ch. 1073, 68 Stat. 919 (1954) (codified as amended at 42 U.S.C. §§ 2011–2281) (1994 & Supp.1999), which provided for the "licensing of private construction, ownership, and operation of commercial nuclear power reactors for energy production under strict supervision by the Atomic Energy Commission (AEC)." *Duke Power,* 438 U.S. at 63, 98 S.Ct. 2620.

Private power companies remained reluctant to invest in nuclear facilities because of the potentially astronomical liability costs. To address that problem, in 1957 Congress enacted the Price–Anderson Act, Pub.L. 85–256, 71 Stat. 576 (codified as amended at 42 U.S.C. § 2210) (1994 & Supp.1999) ("Price–Anderson"). Price–Anderson contained three main features. First, it established a limit on the aggregate liability of those who wished to undertake activities involving the handling of nuclear material. Second, it channeled public liability resulting from nuclear incidents to the federal government. Finally, it provided that all public liability claims above the amount of required private insurance would be indemnified by the federal government. *See id.*

After several additional changes to the statute, Congress passed the Price–Anderson Amendments Act of 1988, Pub.L. 100–408, 102 Stat. 1069, creating an *exclusive* federal cause of action for radiation injury. The statute defines a "public liability action" ("PLA") "as any suit asserting public liability" growing out of exposure to nuclear radiation. 42 U.S.C. § 2014(hh). "Public liability," in turn, is defined as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation," except for certain claims covered by workers' compensation, incurred in wartime, or that involve the licensed property where the nuclear

incident occurs. *Id.* § 2014(w). Most importantly, Congress required that the substantive rules of decision in a PLA "shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of" section 2210 of Price–Anderson. *Id.* § 2014(hh).

## II. *Claims against NYPA*

Ms. Corcoran raises three challenges to Judge Cote's dismissal of her claims against NYPA. First, she asserts that Judge Cote erred by applying New York's notice of claim requirement to bar an action under Price–Anderson, a federal statute. Second, Ms. Corcoran contends that Judge Cote erred when she applied New York rules governing accrual and tolling to determine that Ms. Corcoran's claims were not timely. Finally, she argues that Judge Cote should have equitably tolled the statute of limitations because NYPA and Westinghouse prevented Mr. Corcoran from discovering his exposure. There is a question as to whether these arguments have been waived.

### A. *Waiver*

■ As a threshold matter, NYPA argues that Ms. Corcoran waived several legal arguments supporting her challenge to Judge Cote's decision. NYPA contends that these arguments were untimely because Ms. Corcoran raised them after summary judgment briefs had been filed. Because Ms. Corcoran is a *pro se* litigant, because her arguments present purely legal questions, and because Judge Cote addressed these arguments, albeit in *dicta,* we choose to overlook any alleged waiver. *See Austin v. Healey,* 5 F.3d 598, 601 (2d Cir.1993); *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 80 (2d Cir.1993).

### B. *New York's Notice of Claim Requirement*

Ms. Corcoran raises three points to support her contention that Judge Cote erred when she applied New York's notice of

claim requirement to bar the claims against NYPA. First, Ms. Corcoran maintains that applying a notice of claim provision to bar recovery under a federal statute violates the Supremacy Clause of the United States Constitution. Second, she asserts that New York's notice of claim requirement is inconsistent with Price–Anderson because it allows state-owned nuclear power plant operators, but not private operators, to escape liability. Finally, she contends that New York's notice of claim requirement frustrates Price–Anderson's goal of ensuring compensation to injured plaintiffs.

### 1. *Supremacy Clause*

The Supremacy Clause of the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. State and local laws are thus preempted when they conflict with federal law. *See National Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88 (2d Cir.1998).

■ Requiring the filing of a timely notice of claim in a Price–Anderson action does not violate the Supremacy Clause. Price–Anderson is not a self-sufficient body of federal law. Rather, "the substantive rules for decision . . . shall be derived from the law of the State in which the nuclear accident involved occurs, unless such law is inconsistent with the provisions of" section 2210 of Price–Anderson. 42 U.S.C. § 2014(hh). By providing that the substantive rules of decision are derived from state law, "Congress expressed its intention that state law provides the content of *and operates as federal law*." *In re TMI Litigation Cases Consolidated II*, 940 F.2d 832, 855 (3d Cir.1991) (emphasis added); *see O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1100 (7th Cir. 1994). Because the substantive rules of decision "operate[ ] as federal law," there

is no conflict and the Supremacy Clause is simply not implicated.

### 2. *"Glaring Inconsistency"*

■ Plaintiff suggests that requiring a notice of claim imposes different standards of liability on private and public nuclear power plant operators. She notes that while IP3 is owned and operated by NYPA, a state agency, the adjoining nuclear power plant, IP2, is owned by Consolidated Edison, a corporation. She claims that requiring a notice of claim would create a "glaring inconsistency" because a worker injured in IP3 would be required to file a notice of claim, but a worker injured in IP2 would not be similarly burdened. We implicitly rejected this argument in *Hardy v. New York City Health & Hospital Corp.*, 164 F.3d 789 (2d Cir.1999), and explicitly reject it here.

In *Hardy*, we held that the Emergency Medical Treatment and Active Labor Act ("EMTALA") required the application of New York's notice of claim provision to actions seeking redress for violations of that federal statute. *See id.* at 794. By requiring EMTALA plaintiffs to file a notice of claim against municipal hospitals, but not private hospitals, we accepted the premise that imposing different requirements on suits by similarly-situated plaintiffs does not create an inconsistency sufficient to reject adopting a notice of claim requirement. We see no compelling reason to depart from this reasoning in Price–Anderson actions.

### 3. *Frustrating Price–Anderson's Purposes*

Plaintiff contends that Price–Anderson adopts state substantive law only to the extent it is consistent with the provisions of 42 U.S.C. § 2210 and that requiring the filing of a timely notice of claim is inconsistent with § 2210. We disagree.

Plaintiff cannot point to a specific provision in § 2210 that is inconsistent with requiring the filing of a timely notice of claim. Indeed, the only provision of

§ 2210 that is close to creating a problem is § 2210(n)(1), which authorizes the Atomic Energy Commission to require its contractors to waive any "issues or defense," such as the notice of claim requirement, in the event of an "extraordinary nuclear occurrence" ("ENO"). 42 U.S.C. § 2210(n)(1). It is undisputed that Ms. Corcoran's claim does not arise out of an ENO—"an[ ] event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines to be substantial, and which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines has resulted or will probably result in substantial damages to persons offsite or property offsite." 42 U.S.C. § 2014(j). Her claims arise out of a less dramatic accident. Requiring a timely notice of claim in this case does not conflict with § 2210(n)(1). Accordingly, Judge Cote's decision to apply this state law requirement was consistent with the plain terms of the statute. *Cf. Lujan v. Regents of the Univ. of Cal.,* 69 F.3d 1511, 1518 (10th Cir.1995).

Ascending to a more philosophical plane, plaintiff appears to suggest that the 1988 amendments to Price–Anderson show Congress's intent to facilitate recovery under the Act. Because New York's notice of claim requirement would impede recovery, Ms. Corcoran asserts that applying this state law requirement would be inconsistent with the federal policy embodied in the Act. We disagree because: (1) the plain terms of Price–Anderson mandate application of New York's notice of claim requirement; and (2) applying New York's notice of claim requirement does not sufficiently conflict with the statute's laudable purposes.

"Our task . . . is to effectuate the terms of the statute as written, not to give effect to some broad, amorphous federal policy." *Id.; cf. Skubel v. Fuoroli,* 113 F.3d 330, 335 (2d Cir.1997). The statutory language is clear—state law provides the substantive rules for decision in PLAs unless it is "inconsistent with the *provisions* of" section 2210. 42 U.S.C. § 2014(hh) (emphasis added); *see Lujan,* 69 F.3d at 1518. We see no inconsistency between permitting waiver of the notice of claim requirement in PLAs arising out of an ENO and still insisting upon a notice of claim in PLAs arising out of less serious nuclear incidents. *Cf. id.* "Congress may have concluded that the problems of proof associated with lesser nuclear accidents, which are not always easily identified, outweigh a plaintiff's right to full compensation." *Id.*

Even if we look to the purposes underlying the 1988 amendments to Price–Anderson, as plaintiff directs, we do not perceive a conflict sufficient to justify departing from New York's notice of claim requirement.

Congress enacted Price–Anderson to: (1) ensure that adequate funds would be available to satisfy liability claims in the event of a nuclear accident; and (2) encourage private sector participation in the atomic energy industry by reducing the threat of potentially enormous liability arising out of the operation of an atomic energy plant. *See El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 119 S.Ct. 1430, 1433, 143 L.Ed.2d 635 (1999); *Duke Power,* 438 U.S. at 64, 98 S.Ct. 2620.

Admittedly, requiring a timely notice of claim creates a potential barrier to recovery. If this barrier were insurmountable, or deprived injured plaintiffs of an adequate recovery, the notice of claim requirement might indeed be inconsistent with the purposes underlying Price–Anderson. *See McLandrich v. Southern Cal. Edison Co.,* 942 F.Supp. 457, 466–67 (S.D.Cal.1996); *see also Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 257, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (Congress "disclaimed any interest in promoting the development and utilization of atomic energy by means that fail to provide adequate remedies for those who are injured by exposure to haz-

**540**

ardous nuclear materials."). However, that is just not the case here.

■ First, compliance with the notice of claim requirement is practicable. Under New York's "discovery rule," N.Y. C.P.L.R. § 214–c(3) (McKinney 1990 & Supp.1999), a plaintiff asserting a personal injury claim based on the latent effects of radiation exposure must file a notice of claim within ninety days of "the date of discovery of the injury by the plaintiff or on the date when through the exercise of reasonable diligence the injury should have been discovered, whichever is earlier." *Id.* The ninety-day period begins to run on the date plaintiff became "aware of the primary condition for which damages are sought." *Whitney v. Quaker Chem. Corp.,* 90 N.Y.2d 845, 660 N.Y.S.2d 862, 863, 683 N.E.2d 768 (1997); *see Krogmann v. Glens Falls City Sch. Dist.,* 231 A.D.2d 76, 661 N.Y.S.2d 82, 83 (3d Dep't 1997).

Although the 90–day period begins to run despite a plaintiff's ignorance about the *cause* of his injury, it can hardly be disputed that radiation exposure is harmful and causes diseases like leukemia.[1] By triggering the notice of claim period when the plaintiff becomes aware that he has an injury, New York law affords Price–Anderson plaintiffs a reasonable opportunity to comply with the notice of claim requirement. Because the notice of claim requirement does not unduly impair a Price–Anderson plaintiff's ability to recover, it is not inconsistent with the statute's compensatory purpose. *See Lujan,* 69 F.3d at 1518.

It should also be noted that any difficulty experienced in attempting to comply with this requirement is somewhat ameliorated by the plaintiff's ability to request permission to file a late notice of claim. *See* N.Y. Gen. Mun. Law. § 50–e(5) (McKinney 1999). The appropriate state court may extend the time to file a notice of claim until the relevant statute of limitations expires, even if the action has already been commenced. *See id.* § 50–e. Therefore, a Price–Anderson plaintiff who fails to file a notice of claim within ninety days of the claim's accrual can still maintain his action if the state court permits a late filing of the notice. *See Hardy,* 164 F.3d at 795. Ms. Corcoran sought late-filing permission from the district court, which denied her request, stating, in part that a federal court "does not have jurisdiction to grant leave to file a late notice of claim" in light of § 50–e's provision that " 'All [such] applications . . . shall be made to the county court.' " *Corcoran II,* 1997 WL 603739, at *6. We need not decide here whether the federal court has such jurisdiction, however, because the district court went on to conclude that even if it had jurisdiction it would deny Ms. Corcoran's request on its merits. *See id.* at *6–7. We see no error in the latter conclusion. While Ms. Corcoran's attempt to avail herself of this procedural protection was unsuccessful, her failure does not compel the conclusion that New York's statutory regime is inherently unjust or even unfair.

To the contrary, New York's notice of claim requirement actually furthers one of Price–Anderson's purposes—ensuring that adequate funds are available to satisfy meritorious claims. The notice of claim requirement " 'afford[s] the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation.' " *Hardy,* 164 F.3d at 794 (quoting *Fincher v. County of Westchester,* 979 F.Supp. 989, 1002 (S.D.N.Y.1997)). Prompt investigation allows the State to make a more reasoned determination of the claim's validity. This protects the limited indemnification

1. We are not faced with a situation involving a harm that could not reasonably be known to have been caused by exposure to a toxic substance within the relevant ninety days. It can hardly be disputed that it has long been scientifically known that radiation exposure causes leukemia. Therefore, unlike our concurring colleague, we see no need to reach an issue that is not presented by the facts of this case.

fund from being diluted by unwarranted claims. *Cf. Davidson v. Bronx Mun. Hosp.,* 64 N.Y.2d 59, 484 N.Y.S.2d 533, 535, 473 N.E.2d 761 (1984); *Altmayer v. City of New York,* 149 A.D.2d 638, 540 N.Y.S.2d 459, 460 (2d Dep't 1989).

In sum, we find no rational basis for avoiding a clearly applicable rule of law. A timely notice of claim must be filed in a Price–Anderson litigation. We turn next to consider whether plaintiff complied with this requirement.

### C. *Ms. Corcoran's Failure to File a Timely Notice of Claim*

■ Judge Cote properly held that plaintiff failed to file a timely notice of claim. Mr. Corcoran became "aware of the primary condition for which damages are sought," *Whitney,* 660 N.Y.S.2d at 863, 683 N.E.2d 768, on either March 16, 1992, when Dr. Balagot diagnosed him with CML and "discussed ... radiation exposure" as a possible cause of CML, or, at the latest, four days later when Dr. Shevde confirmed the diagnosis. Ms. Corcoran's April 1994 notice of claim was filed nearly one and one-half years too late for her negligence claim. *See Perry v. City of N.Y.,* 238 A.D.2d 326, 656 N.Y.S.2d 301, 302 (2d Dep't 1997).

■ The notice of claim for battery was also untimely because, as held in *Plaza v. Estate of Wisser,* 211 A.D.2d 111, 626 N.Y.S.2d 446, 451 (1st Dep't 1995), it does not get the benefit of C.P.L.R. 214–c(3)'s discovery rule and it was filed almost nine years after Mr. Corcoran's exposure to radiation.

■ The fraud claim is similarly barred. The ninety-day period began to run either when the fraud was committed or at the time the fraud was, or could reasonably have been, discovered. *See Bennett Silvershein Assocs. v. Furman,* No. 91 Civ. 3118, 1997 WL 531310, at *7 (S.D.N.Y. Aug. 28, 1997). The fraud claim against NYPA arose either in June 1985 when NYPA concealed the exposure from Mr. Corcoran or, at the latest, in March 1992 when Mr. Corcoran discovered his illness and with reasonable diligence could have discovered the alleged fraud. Therefore, the April 1994 notice of claim was untimely.

Finally, because all Mr. Corcoran's claims were barred by his failure to file a timely notice of claim, Ms. Corcoran's wrongful death and survival actions are similarly barred. It is a condition precedent to wrongful death and survival actions that the decedent's claim must have been viable at the time of death. *See* N.Y. Est. Powers & Trusts Law § 11–3.2(b) (McKinney Supp.1999); *Kelliher v. New York Cent. & H.R.R. Co.,* 212 N.Y. 207, 212, 105 N.E. 824 (N.Y.1914).

Judge Cote properly dismissed the claims against NYPA because of Ms. Corcoran's failure to file a timely notice of claim. We see no need to consider whether, as Judge Cote held, these claims were also time-barred under the applicable statutes of limitations.

### III. *Claims against Westinghouse*

■ Mr. Corcoran's injuries obviously occurred within the scope of his employment with Westinghouse. Therefore, New York Workers' Compensation Law provides the *sole* recourse for unintentional torts by Westinghouse. *See* N.Y. Work. Comp. Law §§ 11, 29(6) (McKinney Supp. 1999). Workers' Compensation, however, does not apply under New York law when the employer engages in conduct constituting an intentional tort. *See id.; Acevedo v. Consolidated Edison Co. of N.Y.,* 189 A.D.2d 497, 596 N.Y.S.2d 68, 70–71 (1st Dep't), *leave to appeal dismissed,* 82 N.Y.2d 748, 602 N.Y.S.2d 806, 622 N.E.2d 307 (1993). In addition to negligence claims, Ms. Corcoran asserted that Westinghouse: (1) intentionally exposed Mr. Corcoran to radiation; and (2) intentionally concealed knowledge of the exposure from Mr. Corcoran. Judge Cote characterized these claims as causes of action for "battery" and "fraud" under New York

law. Judge Cote found that New York's one-year statute of limitations governing battery actions applied to both the fraud and battery claims because the fraud claim was "incidental" to the battery. Both claims were held to be time-barred under the one-year limitations period. Plaintiff challenges the dismissal of these claims.

### A. *Dismissal of the "Battery" Claim*

Ms. Corcoran raises two challenges to Judge Cote's dismissal of the battery claim. First, she contends that Judge Cote should have applied New York's three-year statute of limitations for personal injury actions to determine the timeliness of the battery claim. Second, she maintains that her battery claim would be timely under federal rules governing accrual and tolling and Judge Cote thus erred by applying state law accrual and tolling rules. We disagree.

### 1. *Appropriate Statute of limitations*

Plaintiff argues that Judge Cote erred when she applied New York's one-year statute of limitations to bar the battery claim. She asserts that Judge Cote should have applied N.Y. C.P.L.R. § 214(5), New York's three-year statute of limitations for personal injury actions, to her battery claim because: (1) personal injuries are analogous to radiation poisoning; and (2) applying the one-year statute of limitations would frustrate Price–Anderson's compensatory purposes because radiation injuries take longer than one year to become manifest. Her arguments are unpersuasive.

■ Judge Cote's determination that Ms. Corcoran's claims are barred by the statute of limitations is reviewed *de novo*. *See Eagleston v. Guido*, 41 F.3d 865, 870 (2d Cir.1994).

■ Price–Anderson contains a three-year statute of limitations for PLAs arising out of an ENO. *See* 42 U.S.C. § 2210(n)(1)(F). Price–Anderson, however, does not provide a statute of limitations governing PLAs, like Ms. Corcoran's, that

arise out of less severe accidents. Subject to a limited exception not relevant here, *see North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995), "[w]hen Congress fails to provide a statute of limitations for claims arising under federal statutes, a court must apply the limitations period of the state-law cause of action most analogous to the federal claim." *Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331, 333 (2d Cir. 1997); *see North Star Steel Co.*, 515 U.S. at 33–34, 115 S.Ct. 1927. "This requires the court to 'characterize the essence' of [a] plaintiff's federal claim." *Sandberg*, 111 F.3d at 333 (quoting *Wilson v. Garcia*, 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)).

■ Plaintiff's initial argument, that the three-year statute of limitations governing negligence claims is most analogous to her intentional tort claim, is without merit. She alleged in her complaint that Westinghouse "intentionally" exposed her father to harmful quantities of radiation without apprizing him of, or obtaining his consent for, such exposure. This is a textbook battery action under New York law— "an intentional wrongful physical contact with another person without consent." *United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993). Because battery was the most analogous cause of action, Judge Cote did not err when she applied New York's one-year battery statute of limitations.

We also reject Ms. Corcoran's contention that applying New York's one-year statute of limitations here is inconsistent with Price–Anderson because the latency period for radiation injuries exceeds one year. By relying on state law to provide the basis for a Price–Anderson action, Congress understood that each state had associated an individual statute of limitations with a specific cause of action and was aware that these neutral state law rules could bar recovery. *See Lujan*, 69 F.3d at 1518. Moreover, Congress expressly recognized that the state's work-

ers' compensation scheme can provide the exclusive remedy for radiation exposure claims. *See* 42 U.S.C. § 2014(w) (prohibiting federal courts from entertaining actions properly characterized as workers' compensation claims under the guise of Price–Anderson). Because New York's Workers' Compensation Law provides an adequate, alternative remedy, we see no inconsistency in applying the statute of limitations New York has assigned to the intentional tort plaintiff alleged in order to circumvent Workers' Compensation Law. *Cf. Building & Constr. Dep't, AFL–CIO v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1492–96 (10th Cir.1993) (state law workers' compensation action sole recourse for Price–Anderson plaintiff); *George v. GPU Nuclear Corp.*, 910 F.Supp. 180, 185 (M.D.Pa. 1995) (same).

In essence, plaintiff advocates a system under which she would be exempt from the one-year statute of limitations applicable to battery claims, while at the same time remaining free from the restrictions imposed by New York's Workers' Compensation Laws. Had Congress envisioned such a "pick and choose" regime, it could have provided for one. It did not.

### 2. *Tolling*

Plaintiff next argues that even if New York's one-year statute of limitations applied to the battery claim, Judge Cote erred when she declined to toll the statute of limitations until Ms. Corcoran "actually" discovered her claim on January 17, 1995. Ms. Corcoran asserts that *federal*, not state, tolling rules apply and her battery claim is timely under federal accrual rules. We disagree.

 Where the federal statute does not provide a statute of limitations and a federal court "borrows" a state statute of limitations, the court also "borrows" the applicable state law tolling rules unless those rules are inconsistent with, or would frustrate the purposes of, the federal law. *See Leon v. Murphy*, 988 F.2d 303, 310 (2d Cir.1993); *Jewell v. County of Nassau*, 917

F.2d 738, 740 (2d Cir.1990). Because the C.P.L.R. provides ample tolling provisions designed to remedy inequity, applying New York's tolling provisions does not frustrate the goals of Price–Anderson. *Cf. Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

 Moreover, even if the federal rule of equitable tolling applies, Ms. Corcoran's claim would still be time-barred. Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's "discovery of the nature of the claim within the limitations period"; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled. *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 60 (2d Cir.1998); *see Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir.1993).

 Mr. Corcoran knew, or should have known, the nature of his claim within the statutory period. He knew in 1985 that he may have been exposed to radiation. NYPA conducted safety meetings, officials spoke to concerned workers, and the area around the stop valve was cordoned off with yellow and magenta tape. In addition, when he was diagnosed with CML in March 1992, at least one of his doctors explained that there was a link between leukemia generally and radiation exposure. During the summer of 1992, he discussed with his ex-wife the possibility of bringing a radiation claim against NYPA and Westinghouse. Finally, he asked Coli to conduct an informal investigation. Under these circumstances, any tolling period would have ended, at the latest, during the summer of 1992 when Mr. Corcoran possessed sufficient information to know the critical facts of his claim. Therefore, the action commenced in 1994 was barred by

the applicable one-year statute of limitations.

### B. *Federal Accrual Rules*

Plaintiff next argues that the accrual date for her intentional tort claims should be determined under federal, not New York, law. Noting that Price–Anderson is a federal statute, Ms. Corcoran relies on this Court's general rule that *federal* rules of accrual apply even when we "borrow" an analogous state statute of limitations. *See, e.g., Kronisch v. United States,* 150 F.3d 112, 123 (2d Cir.1998).

Westinghouse acknowledges our general rule. However, Westinghouse claims that we should depart from our general rule when the plaintiff brings a Price–Anderson action because accrual rules are "substantive" and Price–Anderson requires us to derive the elements of a Price–Anderson action from the applicable state's "rules for decision." *See* 42 U.S.C. § 2014(hh). Westinghouse relies on two unpublished Ninth Circuit cases, *Tokerud v. Pacific Gas & Elec. Co.,* Nos. 96–16629, 1998 WL 168716, 1998 U.S.App. LEXIS 71265 (9th Cir. Apr. 8, 1998), *Tilley v. Pacific Gas & Elec. Co.,* No. 94–56313, 1996 WL 109385, 1996 U.S.App. LEXIS 5548 (9th Cir. Mar. 12, 1996), a Sixth Circuit decision, *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1553 (6th Cir.1997), and *dictum* from the Tenth Circuit, *Lujan,* 69 F.3d at 1516.

■■■ We need not resolve this interesting academic issue because under either federal or New York law, Ms. Corcoran's "battery" claim is untimely. Under New York law, the "battery" claim accrued in 1985 when her father was exposed to radiation. *See Estate of Wisser,* 626 N.Y.S.2d at 451. Ms. Corcoran's action, commenced in 1995, clearly falls outside the one-year statute of limitations governing this claim. *See* N.Y. C.P.L.R. § 215(3) (McKinney 1990).

■■■ Under federal law, an action normally accrues at the time of injury. *See Kronisch,* 150 F.3d at 121. However, "where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." *Id.* Under this rule, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Id.* Discovery of the "critical facts" of injury and causation

> requires only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it.... [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.

*Id.* (quotation omitted).

■■■ By March 20, 1992, Mr. Corcoran had learned from his doctors that his leukemia could have been caused by radiation. Because Mr. Corcoran knew that his leukemia may have been caused by radiation exposure at IP3, his Price–Anderson claims accrued on that date. *See, e.g., id.; Pinaud v. County of Suffolk,* 52 F.3d 1139, 1157 (2d Cir.1995). Thus, the one-year limitations period expired well before Ms. Corcoran commenced this action in 1995.

### C. *Fraud claim*

Ms. Corcoran claims that Judge Cote erred by applying New York's one-year limitations period governing *battery* claims to bar the *fraud* claim. She challenges Judge Cote's finding that the fraud claim was merely "incidental" to the battery claim and New York's shorter limitations period therefore governed both the battery and fraud claims. We reject this argument.

■■■ "In applying a Statute of Limitations it is basic that one look to the es-

sence of plaintiff's claim and not to the form in which it is pleaded." *State v. Cortelle Corp.*, 38 N.Y.2d 83, 378 N.Y.S.2d 654, 656, 341 N.E.2d 223 (1975); *see Brick v. Cohn–Hall–Marx Co.*, 276 N.Y. 259, 264, 11 N.E.2d 902 (N.Y.1937). When a fraud claim is incidental to another asserted claim, the claim does not sound in fraud for purposes of taking advantage of the longer limitations period. *See id.; Doe v. Roe*, 192 A.D.2d 1089, 596 N.Y.S.2d 620, 620–21 (4th Dep't 1993). A fraud action is not incidental only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim. *See Harkin v. Culleton*, 156 A.D.2d 19, 554 N.Y.S.2d 478, 481–82 (1st Dep't 1990).

■ Plaintiff may meet the first requirement because Westinghouse's allegedly false statements designed to conceal the radiation leak seem to be separate and distinct from the exposure. However, Ms. Corcoran does not satisfy the second requirement. She asserts two separate injuries: (1) her father was denied early care and medical monitoring that could have mitigated the effects of his disease; and (2) she and her father were prevented from asserting claims against Westinghouse and NYPA.

The exacerbation of her father's injuries due to the alleged fraud does not constitute a *separate* injury that resulted from the alleged fraud. Rather, it is merely an exacerbation of the original injury. *See, e.g., New York Seven–Up Bottling Co. v. Dow Chem. Co.*, 96 A.D.2d 1051, 466 N.Y.S.2d 478, 480 (2d Dep't 1983), *aff'd*, 61 N.Y.2d 828, 473 N.Y.S.2d 973, 462 N.E.2d 150 (1984); *Spinosa v. Weinstein*, 168 A.D.2d 32, 571 N.Y.S.2d 747, 753 (2d Dep't 1991); *Harkin*, 554 N.Y.S.2d at 481–82. Similarly, her inability to commence a timely action does not satisfy the independent injury requirement. *See General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 272 N.Y.S.2d 337, 340, 219 N.E.2d 169 (1966).

### IV. *Leave to Amend the Complaint*

Plaintiff's final point is that Judge Cote erred when she denied the request to amend the pleading to assert new claims against NYPA and Westinghouse. Prior to the denial of leave to amend, Ms. Corcoran commenced a separate action asserting these same claims. This parallel action was dismissed on the merits on March 30, 1999 (after this appeal was filed). *See Corcoran IV*, No. 97 Civ. 9286(DLC), 1999 WL 177444 (S.D.N.Y. Mar. 30, 1999). Therefore, her challenge to Judge Cote's denial of leave to amend is moot. *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir.1997).

### CONCLUSION

We have considered all the arguments raised by appellants and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.

CALABRESI, Circuit Judge, concurring:

I concur in the result and join fully in the opinion of the court. I do so because there is nothing in the opinion that suggests that a strict ninety-day notice of claim provision would be applied by New York in situations involving a harm that could not reasonably be known to have been caused by exposure to a toxic substance within the relevant ninety days. Nor does the opinion in any way suggest that the ninety-day notice requirement would be valid under the Price–Anderson Act if New York actually did apply it in such a case. On the facts before us, and as to the harms such as leukemia that we can currently link to radiation, the ninety-day notice requirement fits well within the Price–Anderson scheme, and that is enough to decide this case.

I write separately to emphasize the likelihood that, were causation unknown and unknowable in the relevant period, New York would not apply its ninety-day notice

provision, or B what is essentially the same thing B would grant permission to file a late notice of claim.[1] Either way, a federal court, following state law, would be bound to reach an analogous result and permit the claim to proceed.

Two New York cases lead me to conclude that New York courts would allow such a suit to survive a failure to file a ninety-day notice of claim. In *Krogmann v. Glens Falls City School District*, 231 A.D.2d 76, 661 N.Y.S.2d 82 (3d Dep't 1997), the New York Appellate Division directly addressed the ninety-day notice of claim requirement. The *Krogmann* court observed that, under the New York statute of limitations, N.Y. C.P.L.R. § 214–c(3) (McKinney 1990), the notice, "to be timely, had to be served within 90 days after plaintiff discovered her injury (or should have discovered it, through the exercise of reasonable diligence)." *Krogmann*, 661 N.Y.S.2d at 83.[2] The court further pointed out that in *Wetherill v. Eli Lilly & Co.* (*In re New York County DES Litigation*), 89 N.Y.2d 506, 655 N.Y.S.2d 862, 678 N.E.2d 474 (1997), the New York Court of Appeals had read "discovery" for purposes of § 214–c(3) to mean "discovery of the manifestations or symptoms of the latent disease that the harmful substance produced," and not discovery of a causal connection between the harmful substance and the injury. *Krogmann*, 661 N.Y.S.2d at 83 (quoting *Wetherill*, 655 N.Y.S.2d at

866, 678 N.E.2d 474) (internal quotation marks omitted). Accordingly, the court in *Krogmann* ran the ninety-day notice period from the date that symptoms were, or should have been, discovered. *See id.*

But *Wetherill*, as the *Krogmann* court made clear, read § 214–c(3) in this way because an adjacent provision of the New York law, § 214–c(4), established a different statute of limitations for cases in which "the extent of technical knowledge of the scientific and medical communities was not then sufficiently advanced to allow the cause of those physical complaints to be ascertained." *Id.* (citing N.Y. C.P.L.R. § 214–c(4) (extending the limitations period in such cases by a year, running from the time that scientific knowledge of a causal relationship was established)).

Thus, the *Krogmann* court came out as it did with respect to the ninety-day notice period expressly because the plaintiff had "not alleged that the extent of technical knowledge" was insufficient to establish causation at the time her injury was or ought to have been discovered, and because the plaintiff had not, on that basis, "sought leave to file a late notice." *Id.*

The matter is of importance because there may be Price–Anderson Act cases that fit into the exception established in § 214–c(4) and reaffirmed in *Wetherill* and *Krogmann*. The court today is quite right when it says that "it can hardly be disput-

---

**1.** In response to my separate opinion, my colleagues have added footnote 1 to the opinion of the Court. It makes the limited scope of that opinion clear beyond peradventure, and hence, as they quite correctly note, renders my concurrence not strictly necessary. I welcome that footnote. But having spent some time figuring out why our decision in this leukemia case does not have implications for the application of the ninety-day notice provision in situations in which the causal connection between the alleged tort and the injury is not scientifically known at the time of the exposure, I see no harm in sharing that analysis.

**2.** N.Y. Gen. Mun. Law § 50–e provides in pertinent part that "[i]n any case founded upon tort where a notice of claim is required

... the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises" The general New York statute of limitations, N.Y. C.P.L.R. § 214–c(3), defines the date on which "he claim arises" for purposes of § 50–e by stating that in cases where a notice of claim is required to be filed "within a specified period of time after the claim or action accrued, a claim or action for personal injury ... caused by the latent effects of exposure to any substance ... shall be deemed to have accrued on the date of discovery of the injury by the plaintiff or on the date when through the exercise of reasonable diligence the injury should have been discovered, whichever is earlier."

ed that [it has long been scientifically known that] radiation exposure ... causes diseases like leukemia." But suppose it was only years after the symptoms of an injury (say profound hardness of hearing) had been discovered that the scientific community found a causal connection between radiation and deafness. In that situation, the reasoning of *Wetherill* and the careful language of *Krogmann* both suggest that the ninety-day notice of claim requirement would not bar a claim brought shortly after the scientists had made the link.

It is this fact that makes New York's ninety-day notice of claim provision consistent with the Price–Anderson Act. If New York, instead, had a rigid ninety-day notice requirement, one that in effect barred plaintiffs from suing state agencies for nuclear harms when the causal link necessary to that suit was not discoverable within the ninety-day period, then the ninety-day notice requirement might very well be inconsistent with the Price–Anderson Act. As the opinion of the court today points out, the Price–Anderson Act contains both provisions designed to encourage atomic energy by limiting liability and provisions designed to protect injured plaintiffs' right to recovery. Because the ninety-day notice of claim requirement, as interpreted by New York courts, seems to be consistent with both, and because, as the court today points out, the case before us in no way presents a situation that would require invoking an exception to the ninety-day notice requirement to meet Price–Anderson's remedial aims, I join the opinion of the court as well as its result.